We'll move on to the last case of the day, Zander v. Orlich, No. 17-2792. Mr. Gladish. May it please the Court, members of the Council, my name is David Gladish and I represent Rep. Zander in this case. This incident took place on September 19, 2013. It's been a long journey for my client. We filed the lawsuit. We filed a request for the case to be set for trial. There was a summary judgment filed by the defendants in this case. There were two primary defendants. One was the Sheriff of Lake County, John Buncich, and the other was Officer Orlich. Now, the summary judgment for Officer Orlich was denied and we proceeded to trial in 1983 action where we were successful. So the jury found that the officer had basically used his authority granted by the state and We got a verdict for compensatory damages, punitive damages, and attorney's fees. But we were denied the opportunity to go after Lake County Sheriff's Department on two claims. One for respondent superior. The second one was negligent supervision. Now, there was no definitive case law in the state of Indiana at the time that Magistrate Judge Cherry ruled on this. However, that changed yesterday afternoon. And I was very impressed that when I walked in to sign my name with the clerk that they made sure that I had a copy of that opinion. I had found it last night when I got done with my day's activities, but I was very impressed that they were so prepared. He's right here, you can thank him. Thank you very much. I was indeed impressed. Now, in reference to what happened in this case, Judge Cherry made two findings, basically. Number one, that respondent superior did not apply here because of the scope of employment rule. And second, the negligent supervision did not apply because it wasn't foreseeable. You can't have a few bad apples basically spoil the bunch, so therefore, the plaintiff was out on both claims. The problem with his ruling is that the Cox case takes care of both of those. In this instance now, the basis for granting summary judgment for respondent superior is out. The court, and I don't want to read to the, I hate, I teach and I hate when people read to me, so I don't want to read, but I'll summarize basically that, and it's what I put throughout my article and something that Judge Posner foreshadowed from this court, that because of the coercive powers of police officers and the great authority that they're granted and their ability to control people, that they're held to a higher standard. And so are the departments that employ them. So, based upon that fact, they can be held liable under scope of employment rule, and that exception does not apply to them in the context of a sexual assault. We have specifically, in this case with Cox, that the city of Fort Wayne cannot escape liability as a matter of law under the scope of employment rule. And they go on to talk that Fort Wayne argued that the officer's sexual assault was outside the scope of employment as a matter of law because he was neither authorized by the city nor done as a service to the city. That's on page four. The plaintiff counters that the city is not entitled to judge him as a matter of law because the officer's acts were, for a time, authorized by the city and even through Roger, even though Roger was not authorized to sexually assault her. And, going forward, on page six, left-hand side, last paragraph, so the scope of employment rule, shaped by its underlying policies, allows employers liability for an officer's sexual assault. We stress the unique authority that cities best in officers to rise to this conclusion. Hold on a second. Are you looking at a Lexus or Westlaw printout? Yes. Ah, okay. I got it last night. Can you just start over and just give us a reference where you're reading? We're reading off the Supreme Court slip. This is, if you see where section C is, jury can find Fort Wayne liable for officer's sexual assault. Page 13. Yep. Yep. In the paragraph, the second full paragraph above that, is where I'm reading from. And, as other courts have observed, the danger that an officer will commit sexual assault while on duty arises from the considerable authority and control inherent in the responsibilities of an officer in Fort's laws. They also go through and they provide a discussion, and I'm going to provide a short discussion here, between Officer Roger when he performed his sexual assault and Officer Orlich when he performed his. They both were on duty. They both had a marked squad car. They both were in uniform. They were both allowed to be alone with the female that they had control over. They both took them to a different location. They both exercised physical control and authority. In my instance, they told her, if you didn't come with me, we're going to put you in jail. So, she had no choice but to go. Sexual assault occurred. After the sexual assault, both officers took that person to another location. They were both wearing a police uniform. Does it matter that in this case, apparently Officer Orlich left the house and then came back in? And that was a discussion from the Court of Appeals. They said, well, if it was a situation where the officer left, and they left this out of a brief, if the officer left and then she was able to close the door and then he knocked and let the officer in, that could change her opinion. Officer Orlich left for a brief period of time and it turns out to get on the radio saying he's available for calls. Then he came back in unwelcomed and uninvited. Now, there's also a really important... How did he get in? He just walked in the front door. The front door was unlocked. Because he's the one that walked out the front door. The front door was unlocked. Unlocked. And he's the one that made her go to that location. Very important point now. Exercise of authority. Stay close to the front door. Oh, I'm sorry. Exercise of authority here. He told her, you cannot leave this location until 2.30 p.m. He is an officer. He's telling her, you need to stay in this house with no phone, nobody else present. So, again, control. He's controlling her. With that control, he then came in and sexually assaulted her, grabbed her. There's bruises on her forearms. She was sexually assaulted. In that instance, both officers, one uncuffed the woman when he sexually assaulted her in reference to Rogers. But in this case, the sexual assault occurred because he was able to control her at a secluded location that she did not want to go to. And only submitted to it because of the threat of going to jail and having to listen to an officer's directives. Now, there's another aspect. Just one quick. Sure. There's no discussion that I could see in Cox, and I may have missed it, of false imprisonment or negligent supervision. But is it your view that the rationale that the Indiana Supreme Court adopted here, you know, would take care of those two claims as well? Absolutely. The reason is foreseeability. If you look on the opinion on page 15 for Judge Cherry, he's basically saying that just because there's a few bad apples, you can't expect them to supervise all these officers, and therefore it's a situation where he could not expect that this would occur. Well, we know now, based upon this ruling and based upon what Judge Posner said and the Doe cases that I cited. Just a minute. Judge Posner, when he spoke or wrote, was writing for the court, not for himself. Correct. So cite the court, please. Oh, okay. For the Seventh Circuit, when he wrote his opinion, he was basically saying that he foresaw that an instance like this, where officers with this authority would potentially cause these problems. Same thing here. That's not law, that's a guess. I'm sorry? That's not law, that's a guess. It is a good guess, and we see this more and more where we have situations where officers are being exposed for doing things they shouldn't be doing. I think part of it's video cameras, part of it's better policing. I think it's important. I teach a criminal law class, and I have officers in my class, and I want to instill in them the fact that we all have to be understanding that we're all watching an important time of our lives. So going with the negligent supervision aspect, I asked Sheriff Bunton if he had any rules about officers being alone with females. Did he have any rules in reference to having no sex on the job? Do you need any of that at this point? Do I need it? Not really. I mean, it's just one. It is another cause of action. There are two distinct causes of action. Okay. Do you want to save the rest of your time for rebuttal? Does it make a difference? It doesn't make a difference. Do you want to save the rest of your time for rebuttal? I will. Thank you. Thank you, Mr. Braddock. Mr. Estrada. May it please the Court. Alfredo Estrada of Berkestanza and Carberry on behalf of Sheriff Bunzich in his official capacity. Your Honors, we're requesting that you affirm the district court's order and opinion granting Sheriff Bunzich's motion for summary judgment on the plaintiff's Indiana respondeat superior claim and negligent retention claim. The opinion yesterday by the Indiana Supreme Court clarifies the governing law over police officers and what acts they may do which is deemed to be within the scope of employment. And plaintiff's counsel misstates what Cox does. It is not new law. In fact, on page 11, the Indiana Supreme Court reaffirms and double downs on Barnett and quoting Strokes, the leading case on respondeat superior law in Indiana. It states, to be clear, and restates the rule of law in Indiana, the focus is on the scope of employment. It must be how unemployment relates to the context in which the commission of the wrongful acts arose. The Seventh Circuit case in West v. Waymire and the other Chicago cases speak of policy, policy of reasons why there may be a change in law in the future. It does not speak of Indiana respondeat superior claims. The standard has not changed. Yesterday they clarified that police officers who misuse their official duties or authority for sexual assault, it may fall within the scope of employment. Your Honors, in the facts in this case as opposed to the facts in the Breyer case, the consolidated case, which plaintiff has not yet discussed either in brief at the district court or here on appeal, and his first time referencing the Breyer case was in reply. He actually referenced the Cox case to assert a new claim of common carrier exception, which the Indiana Supreme Court held yesterday does not extend to police officers. The facts in the Breyer case are distinguishable, just as Justice mentioned earlier, because Orlich left the home. In the Breyer case, the officer was alone with Breyer throughout the time. He was handcuffed more than once, used that authority to keep her in his control. During the entire time that control was within the officer, when she was so incapacitated, she could hardly stand. And he transported her from a lockup facility to a hospital to home. And during that transport, when he assumed the responsibility as a police officer in exercising those official duties, he sexually assaulted her. In the instant case, even if we assume that inspecting an electrical box, a water pump, or furnace was within the scope of employment of a sheriff's deputy, after that occurred, Zander greeted Orlich at the door. What about the order to stay there? Your Honor, it's not a... He's in uniform, he has threatened her with jail earlier, and he orders her not to leave. Your Honor, it wasn't an order to stay. It was suggested not to return to the Georgia Street home because that's when her son returned from school. In order to keep the peace between the husband and wife who were earlier fighting, and it was a domestic violence call, that was the suggestion that she should stay there for her safety. It was not an order. But after he left the home, in the Cox case at the district court, under the common carrier doctrine and exception, stated, they can find that one encounter did end and a distinct one occurred if the officer reentered the home. That's what occurred here. Once he reentered the home, he exercised no official duties, no official authority onto plaintiff. He was there for his personal gratification, independent of him being an employee at the Lake County Sheriff's Department. Okay, so for you, stepping outside the door is critical. Absolutely, Your Honor. Okay, suppose he stops at the door, about to leave, comes back in. We may have a closer question of material fact there, Your Honor, but those aren't the facts. Steps outside, door clicks shut. Oops, I forgot something. I've got to go back and solve this one. Again, Your Honor, maybe a closer question. But the facts are there was a 10 to 15-minute period. So is it the difference between one step, two seconds, and 10 or 15 minutes? So since the court did reaffirm and double down on stropes, if we look in Barnett, those discussions were when there's a missed, in the midst of unquestionable authorized acts and unquestionable unauthorized acts, there's a, in the midst of those performances, there's a sexual assault, then it goes to the jury. So when we have unquestionable authorized acts, and then he performs unauthorized acts, and the episode begins and ends with authorized acts, then it goes to the jury. That is not what we have here. There's two distinct episodes. One where he was there as a police officer. Why is that a jury question? Well, because Your Honor He hasn't left her property. She's still under his direction to stay there, et cetera. He's under her suggestion. Sorry, you think this is a suggestion by the officer? Your Honor. That's the argument. Your Honor, once it was a suggestion for her safety to stay at the White Oak residence because she was in an earlier domestic violence incident. I thought, though, that the alternative that she was given at the prior home was we can either take you, I don't remember the names of the streets, the Georgia or the White Street, we can take you to the other house or even take you to jail. That was a comment, Your Honor, on how her behavior. So when the officer says you need to stay here until 2.30, I mean, don't you think it's at least a fair inference? Well, I'd rather stay here than go to jail. Your Honor, it was a suggestion for her own safety to stay at the home because she entered into it. Is that the way the Lake County prosecutor handles things when people don't do what officers tell them to do? Excuse me? The Lake County prosecutor's office handles civilians' refusal to comply with orders from police officers by saying, well, we think the officer just suggested that, so we're not going to prosecute. I can understand if the court frames that as a order, but even when he left after stating that, she resumes control of her own person and environment. She chose not to lock the door. At that point, it could have been anyone of the public entering the home for personal gratification. And these would be good issues, but plaintiff never rose whether it was a ---- marked police car standing in front of the house. I'm going to go in and sexually assault the occupant. Your Honor, when he reentered the home, he was not performing authorized acts. When he first ran into Xander in her bedroom, he was not wearing his police officer uniform. He was on the floor, right? He was on the floor, Your Honor. You think that makes a difference?  Your Honor, it makes a difference that there's a separate episode independent of his scope of employment. Putting waiver aside, Your Honor, I believe there is no question of material fact in that the district court ruled. Sorry, what? Waiver? Yes, Your Honor. At the district court, plaintiff failed to cite and the district court noticed any Indiana case law and analyzation of that case law concerning Indiana Respondee S.A.P.R. claim. His position at the district court was that the Seventh Circuit's opinion in Westview Mayweather and that dicta comparing Respondee S.A.P.R. law liability to Section 1983 liability, that there should be a higher standard, maybe strict liability. He never analyzed whether the acts of oral itch under Indiana law were under the scope of employment. He doesn't cite to the Cox case for Respondee S.A.P.R. law until his reply brief here at the appeals level. For those reasons, we ask that the court affirm the district court's order on Respondee S.A.P.R. law. As to Cox changing the law for negligent hiring, retention, and training, that's just not what occurred yesterday with the Cox decision. The focus on whether there's a duty to a victim from an employer is the foreseeability factor. And the court's duty is to determine whether plaintiff was a foreseeable victim to a foreseeable harm. Again, putting aside the waiver argument at this point, there is nothing in the record that demonstrates Orlich had the propensity to commit a sexual battery. And the Indiana court cases on this state it as a reoccurrence of past criminal activity. Admittedly, Orlich, at the first time, Xander brings this up, Orlich had a theft and a fraud issue before his employment at the Lake County Sheriff's Department. But during his employment, he had no reprimands or complaints of civil battery, civil rights violations. Is he still employed with the Sheriff's Department? Excuse me? Is he still employed by the Sheriff's Department? He is, Your Honor. On the street, patrolling? I'm not sure of his duty assignment, but he's employed. He was suspended for a year without pay, and the Sheriff-Mayor Board rules and regulations, they govern that procedure of discipline. And the Sheriff-Mayor Board entered a settlement agreement with Mr. Orlich. There is no foreseeable, no facts in the record that would have made Bungess aware of Orlich's propensity to commit sexual battery. And the plaintiff failed to cite to any at the district court. Instead, he cited to Doe v. Chicago and asked the court to imply a higher standard of strict liability in these instances. He did not cite to Indiana law. Thank you. Thank you. Anything further, Mr. Kledisch? How much time? 40 seconds. Okay. I would like to point out to the court what Chief Judge stated in her opinion, Arush. Vicarious liability for non-duty police officers' sexual assault is an issue of first impression for this court. That's what she said. All the cases I cited in reference to bringing this issue under state law were cases where they dealt with police officers sexually assaulting somebody while on duty. None existed in Indiana at the time. Thank you, counsel. Thanks to both counsel. Case is taken under advisement. Court will be in recess.